*In re* ESTATE OF HAROLD H. GALVIN.—(Mildred Tobias, Petitioner-Appellant, *v.* Harold H. Galvin, Respondent-Appellee.)

First District (1st Division)   No. 82—0868

Opinion filed February 7, 1983.

Bernard W. Moltz, of Chicago, for appellant.

Goldstine and Broida, Ltd., of Summit (Ronald J. Broida and Kenneth J. Nemec, Jr., of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

After a hearing, the trial court denied the petition of Mildred Tobias (petitioner) to be appointed guardian of the estate and person of Harold Galvin (respondent). Petitioner appeals.

Petitioner called Dr. William Reotutar, a qualified physician, to testify. The doctor testified he first treated respondent in October of 1980, after respondent had been admitted to St. Anne's Hospital. Respondent was suffering from "advanced multiple arthritis." Also, the respondent had a "cerebral vascular accident" or stroke. The stroke left respondent with a weak right side. Respondent also had a "heart condition." Respondent was released from the hospital after about a month.

The witness also testified that in March of 1981, respondent was again admitted to the hospital. He had suffered "small strokes" and congestive heart failure. Respondent was in the hospital for about a

month. He received treatment for his heart condition and rehabilitation for the weakness of his right side. Upon his release, respondent was ambulatory with the help of a walker or "with a cane and some help."

Respondent was readmitted to the hospital in the fall of 1981 for treatment of his heart, cerebral, and arthritic conditions. The witness diagnosed another stroke and noted that respondent was "a little bit confused at times and was a little bit agitated at times." A psychiatric consultant observed that respondent experienced "some delusions" and "hallucinations." Dr. Reotutar diagnosed the respondent as having "organic brain syndrome" which describes "behavioral disorder due to some degeneration or atrophy of the brain cells." Respondent remained in the hospital for about two months. Respondent is currently under medication for his heart condition. Failure to take the medication as prescribed could endanger his life. While his heart condition is currently stable, the condition is irreversible. Similarly, organic brain syndrome is irreversible and progressive. Although the doctor did not know how respondent handled his financial affairs, he believed respondent was disabled and unable to manage his affairs. On cross-examination the doctor testified that the respondent had made some recent improvement. He stated the respondent was "more oriented and more realistic."

Under questioning by the trial judge, respondent testified he owns the three-flat building in which he lives. He occupies the basement apartment with two men, John and Mike. They do not pay rent but respondent does collect rent from the other two apartments. Respondent handles his own financial affairs and has a checking account which currently has a balance of $350. Respondent receives social security of about $550 per month. Respondent did not believe he had a heart condition but he continues to take the medication prescribed by the doctor.

Under adverse examination by counsel for petitioner, the respondent testified he never had a checking account, he invented the snowmobile, at one time he had a pet black widow spider, and he could produce fire by pointing his finger. He also testified that John and Mike sometimes prepare his meals but he can and sometimes does prepare his own meals. He stated he could shop by himself and go to the laundromat with use of his walker and pulling a shopping cart. He testified he was able to take care of himself and did not want a guardian.

During the examination of respondent, the trial judge interrupted the proceedings and stated, "There is no way in God's world that I

am going to adjudicate him a disabled person. He is physically suffering from some disability. *** He is eccentric *** but there is no way I am going to adjudicate him in need of a guardian. *** He lives a bizarre, strange life. I might not want to do it, but unless you can make an offer of proof that is going to show me that he does not understand the things he's doing —. He understands. ***."

Thereafter, counsel for petitioner made an oral offer of proof that John and Mike would testify respondent had no concept of time relationship, believed he had been a co-worker with the Shah of Iran, and the men plan to move out of respondent's apartment so that respondent would be left alone. In addition, petitioner's attorney offered to call Lorraine Polinski, cousin of the respondent, for examination under Supreme Court Rule 238 (87 Ill. 2d R. 238). The attorney stated this witness would testify that she had hired an attorney and that "[s]he insisted a will be drawn, naming her as executor of this estate." The witness has recommended to respondent that he go to Oak Forest. Also, the respondent is "constantly" at petitioner's home where she and her mother "take care of" the respondent. In addition Lorraine Polinski took the respondent outside without shoes or stockings and wearing only slippers during subzero weather. Also, "another neighbor" would testify that when respondent went to the hospital his shopping and other needs were provided by the petitioner. The trial judge refused the offer of proof and denied the petition.

In this court, petitioner contends the decision of the trial court was against the manifest weight of the evidence and petitioner was denied due process because the trial judge abused his discretion and did not allow her to a full opportunity to present her case. We disagree.

## I

■ A trial court is mandated to adjudicate a person incompetent and appoint a guardian only when the alleged incompetent is "not fully able to manage his person or estate ***." (Ill. Rev. Stat. 1981, ch. 110½, pars. 11a—2, 11a—3.) The pertinent statute applicable to the case before us was amended effective as of September 16, 1979. This amendment has been referred to as "a considerable refinement and development over the previous provision ***." (*In re Estate of Mackey* (1980), 85 Ill. App. 3d 235, 238, 406 N.E.2d 226.) The pertinent statute provides (Ill. Rev. Stat. 1981, ch. 110½, pars. 11a—2, 11a—3):

"§ 11a—2. 'Disabled person' defined. 'Disabled person' means a person 18 years or older who (a) because of mental deteriora-

tion or physical incapacity is not fully able to manage his person or estate, or (b) is mentally ill or developmentally disabled and who because of his mental illness or developmental disability is not fully able to manage his person or estate, or (c) because of gambling, idleness, debauchery or excessive use of intoxicants or drugs, so spends or wastes his estate as to expose himself or his family to want or suffering."

"§ 11—3a. Adjudication of disability—Power to appoint guardian. (a) Upon the filing of a petition by a reputable person or by the alleged disabled person himself or on its own motion, the court may adjudge a person to be a disabled person and may appoint (1) a guardian of his person, if because of his disability he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person, or (2) a guardian of his estate, if because of his disability he is unable to manage his estate or financial affairs or (3) a guardian of his person and of his estate.

(b) Guardianship shall be utilized only as is necessary to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence. Guardianship shall be ordered only to the extent necessitated by the individual's actual mental, physical and adaptive limitations."

In commenting specifically upon these portions of the pertinent statute, this court stated that the legislature made these amendments "an express part of the statutory scheme for appointed guardians for disabled adults." (85 Ill. App. 3d 235, 238.) The *Mackey* court also made the following statement (85 Ill. App. 3d 235, 238):

"Under the new sections, the legislature has made it clear that although a person may be a disabled person, in the statutory sense of not being fully able to manage his person, a guardian is not therefore permissible or appropriate, if that person is capable of making and communicating responsible decisions concerning the care of his person. Thus, a person who was physically unable to care for himself, but who could direct others in such activity, would not necessarily need a guardian over his person. Similarly, a person might be a 'disabled person' but nevertheless not be in need of a guardian over his estate, because with help from others he is able to direct and manage his affairs and estate."

We believe it is fundamental that the determination of whether or not respondent is incompetent is a uniquely factual question to be de-

cided by the trial judge. We cannot envision an instance in which the observation of the witnesses, particularly the alleged incompetent, is more critical to the final outcome of the proceedings. Because the trial judge observed the witnesses we " 'will not disturb [the] trial court's finding and substitute [our] own opinion unless the holding of the trial court is manifestly against the weight of the evidence.' " (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110, 382 N.E.2d 1205, quoting *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.)

▮ In the case at bar, it is clear the respondent suffers from some physical disability and has some mental peculiarities. Nevertheless, with particular reference to the above citation, we cannot say the determination of the trial judge that respondent was not unable to manage his person and estate is contrary to the manifest weight of the evidence.

## II

In our opinion, the action of the trial judge in interrupting the presentation of petitioner's case is analogous to the judge simply refusing the admission of all subsequent evidence. The determination of the admission of evidence is discretionary with the trial court, and its decision will not be reversed absent a clear abuse of discretion. *In re Marriage of Hofstetter* (1981), 102 Ill. App. 3d 392, 396, 430 N.E.2d 79.

The trial court asked counsel for petitioner to make an offer of proof, which counsel did. The purpose of an offer of proof is to specify to the trial judge, opposing counsel and a reviewing court the substance of the evidence sought to be admitted. *Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 369, 390 N.E.2d 417.

▮ In the case at bar, it is clear that the trial judge considered the substance of the offer of proof and decided that the proposed evidence would not affect his determination of the competency of respondent. We find no abuse of discretion here by the able trial judge. Likewise we have considered the offer of proof, and we conclude that the evidence sought to be introduced would not affect the legal propriety of the finding of the trial court. Even assuming the proferred evidence to be actually proved, we find the decision by the trial court was not against the manifest weight of the evidence, and petitioner was not prejudiced by the action of the trial judge. (*Canales v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 773, 778-79, 416 N.E.2d 303.) On the contrary, our study of the record convinces us that petitioner had a complete and careful hearing of her case before

an able and impartial judge. We find no deprivation of due process here and no constitutional issue.

For these reasons, the decision appealed from is affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.