FOURTH DIVISION

September 22, 2005 

No. 1-04-3325

In Re ESTATE OF MARIE AHERN, a Disabled Person ) Appeal from the

) Circuit Court of

(Janna Dutton, ) Cook County.

)

Judgment Creditor-Appellant, )

v. ) No. 00 P 3679

)

The Marie Ahern Trust, Robert Ahern, Trustee, ) Honorable

) Mary Ellen Coghlan,

Judgment Debtor-Appellee). ) Judge Presiding.

MODIFIED UPON DENIAL OF PETITION FOR REHEARING

JUSTICE GREIMAN delivered the opinion of the court:

Appellant Janna Dutton, counsel for the North Shore Senior Center, which had filed a guardianship petition on behalf of Marie Ahern (deceased), was awarded attorney fees payable by the Marie Ahern Trust (Trust) and sought enforcement of the judgment against the Trust and decedent’s son, appellee Robert Ahern, Jr. (Robert), as trustee.  During enforcement proceedings, the circuit court struck Robert’s emergency motion for change of judge, finding that the court lacked subject matter jurisdiction on the grounds that the estate had already closed.  The court denied Dutton’s subsequent motion to reconsider, and she now appeals, contending that the circuit court erred and in fact retains subject matter jurisdiction for purposes of enforcing the judgment.  For the reasons that follow, we reverse and remand for further proceedings.

In April 2000, the North Shore Senior Center, in its capacity as an Elder Abuse Provider Agency and with Dutton as counsel, petitioned the circuit court to appoint a guardian 
ad litem 
for her.  The Senior Center alleged that decedent suffered from advanced dementia and was therefore incapable of managing her affairs and making or communicating decisions regarding her care.  The Senior Center also alleged that Robert was financially exploiting decedent and filed a petition to freeze her assets, so as to prohibit Robert from "selling, gifting, transferring, or wasting” decedent’s assets without court approval.

Robert objected to the petition for guardianship, arguing that decedent’s assets were "being handled adequately” and that decedent was "excellently provided for and taken care of,” with Robert assisting in the management of "all of her personal and financial matters.”  He further argued that appointing a guardian other than himself or one of his associates would harm decedent’s financial well-being and her physical and mental health.  Robert also filed a motion to protect, contesting the Senior Center’s allegations of abuse and seeking to stop the Senior Center from having an armed officer accompany the process server.  He alleged that the motivation behind the officer’s presence stemmed from the Senior Center’s "extreme hostility” toward the Ahern family and the "successor trustee of the Marie Ahern Trust.”  The circuit court denied the motion.

On May 1, 2000, the circuit court appointed the Public Guardian as temporary guardian for the decedent’s person and estate.  The court granted the Public Guardian the authority to investigate any assets in which the decedent individually or jointly had an interest, including all assets held in trust.  On June 21, 2000, the court appointed the Public Guardian plenary guardian of decedent’s estate.  Robert moved to vacate the appointment, arguing that improper service of process had been made and that the appointment adversely affected decedent’s physical, mental, and emotional health.  He also alleged that the Senior Center’s petition to freeze decedent’s assets had been the catalyst for a decline in her physical, mental, and emotional health.  The circuit court denied the motion.

In his motion to reconsider the appointment, Robert again argued that service of process had been improper and that he as decedent’s son could make all medical decisions on her behalf.  Regarding decedent’s finances, Robert argued that "since all of Marie Ahern’s assets which have any substantial value were transferred to a trust” prior to the commencement of guardianship proceedings, decedent had no need for a guardian to oversee her assets.  He further alleged that the statement of income and expenses from the Trust would show that he had used the Trust, including its capital, to pay for decedent’s care.  Robert additionally asserted that "with [decedent’s] trust, Robert Ahern has the full legal authority to make any decisions which [decedent] cannot make for herself in every major area of her life.”  The court denied Robert’s motion to reconsider the appointment.

On September 11, 2000, the circuit court awarded $1,350 in attorney fees to counsel for Marie’s guardian 
ad litem
, Susan Kennedy.  The fees were assessed against the "ward’s trust” and the "trustee” was ordered to pay the specified amount.  On October 19, 2000, the court awarded $8,029.55 in fees and costs to Dutton and against "the active Trustee of the Marie Ahern Trust, currently Robert Ahern, Trustee.”  Robert filed a motion to reconsider the orders awarding fees, arguing that the Trust, and he as trustee, were never parties to the proceedings.  He noted that he had used the designation "Robert Ahern” for all court filings and had never explicitly appeared in any capacity as trustee.  The court denied the motion and entered a reduced award of $7,934.55 against the Trust in January 2001.

Decedent died on November 25, 2000.

Enforcement proceedings against Robert as trustee commenced in August 2001, when Dutton and Kennedy filed a petition for a rule to show cause for failure to pay the fees awarded against the Trust.  The circuit court entered a rule to show cause against Robert and ordered him to appear on September 21, 2001.  Robert objected and filed a motion to dismiss for lack of jurisdiction, but the circuit court struck the motion.  Robert failed to appear and the court entered a body attachment for contempt.  Robert again moved to dismiss for lack of jurisdiction, filed a response to Dutton and Kennedy’s petition for rule to show cause, and moved to vacate the attachment order.  The court denied the motions and Robert was taken into custody.  He was later released on bond when his attorneys appeared on his behalf.

The guardianship estate closed on October 21, 2001.  Ten days later, Dutton and Kennedy filed another petition for a rule to show cause for Robert’s failure to comply with the court’s orders awarding fees.  The same day, Robert appealed the orders awarding Dutton and Kennedy fees against the Trust.  The appeal was dismissed without comment.  The circuit court granted Dutton and Kennedy’s petition and ordered Robert to appear on December 10, 2001, to show cause.  He again failed to appear, and the circuit court entered a body attachment for failure to pay the awarded fees.  

In June 2002, Robert again appealed the orders awarding fees to Kennedy and Dutton.   This court dismissed the appeal for lack of timeliness, as it was filed more than 30 days after the orders were entered, pursuant to Supreme Court Rule 303(a).  155 Ill. 2d R. 303(a).

In September 2004, Dutton and Kennedy directed citations to discover the Trust’s assets to Wendy’s of New York, Suburban Bank and Trust Company, and Central Federal Savings & Loan, and ordered each entity to respond by October 4, 2004.  On October 1, 2004, Robert filed an emergency motion for change of judge, alleging "harming and harassing” motives, "hatred,” and "personal animus” on the part of the judge presiding over the enforcement proceedings.  The judge assigned to hear Robert’s motion struck it, finding that, pursuant to the Illinois Supreme Court’s holding in 
In re Estate of Gebis
, 186 Ill. 2d 188 (1999), the circuit court had lost subject matter jurisdiction over the proceedings after decedent’s estate closed in October 2001, and dismissed the matter.  Dutton filed a motion to reconsider, which the judge denied.  

Dutton now appeals, contending that the circuit court retains jurisdiction to enforce its own judgment of attorney fees regardless of the closing of decedent’s estate and the attendant guardianship proceedings.  Robert counters that the circuit court’s finding of lack of subject matter jurisdiction was not in error and in addition argues that the court’s award of fees was void 
ab initio
, as the circuit court never obtained personal jurisdiction over the Trust or Robert as trustee.

We deal first with the issue of the trial court’s finding that it had lost subject matter jurisdiction over the enforcement proceedings when the estate closed.  We review the issue of a circuit court’s subject matter jurisdiction over a given set of proceedings 
de novo
.  
In re Marriage of Chrobak
, 349 Ill. App. 3d 894, 897 (2004).  

Subject matter jurisdiction permits a court to hear issues being litigated and to provide requested relief.  
Gebis
, 186 Ill. 2d at 192.  If a court attempts to hear issues or to provide relief beyond its jurisdiction, its orders are void and subject to attack at any time.  
Gebis
, 186 Ill. 2d at 193; 
In re Estate of Steinfeld
, 158 Ill. 2d 1, 12 (1994).  However, once a court has jurisdiction over both the parties and the subject matter, a court has "inherent power to enforce its orders by way of contempt” so long as the underlying orders are not void.  
Steinfeld
, 158 Ill. 2d at 19.  This fundamental premise of procedural law applies to probate proceedings to the same extent that it does to nonprobate proceedings.  
In re Estate of Hall
, 234 Ill. App. 3d 780, 786 (1992); 
In re Estate of Stith
, 105 Ill. App. 2d 429, 435-36 (1969).  

In guardianship proceedings, generally, both the guardianship and the trial court’s jurisdiction to supervise the ward’s estate necessarily terminate upon the death of the ward.  755 ILCS 5/24-12 (West 2002); 
Gebis
, 186 Ill. 2d at 193.  However, the Illinois Supreme Court has upheld orders awarding attorney fees entered prior to and even after an estate has closed, at least with regard to fees owed to a guardian 
ad litem
.  
In re Estate of Wellman
, 174 Ill. 2d 335, 352 (1996).  

In 
Gebis
, the Illinois Supreme Court held that claims against a guardianship estate with a deceased ward are impermissible, as there can be no guardianship estate without a living ward.  
Gebis
, 186 Ill. 2d at 193-94.  In that case, the son of the decedent filed a claim against the guardianship estate, seeking compensation for years of personal care provided to the decedent.  While the case had been appealed on other grounds, the supreme court 
sua sponte 
raised the issue of whether the circuit court possessed subject matter jurisdiction over the son’s claim.  
Gebis
, 186 Ill. 2d at 192.  The court vacated the trial court’s dismissal of the son’s claim, holding that the trial court lacked subject matter jurisdiction to adjudicate it.  The court reasoned that, pursuant to the rule that the guardianship estate and the trial court’s jurisdiction over it terminate upon the death of the ward, a decedent’s estate does not have a living ward who would require a guardian, and any subsequent claims against the guardianship estate would therefore be improper.  
Gebis
, 186 Ill. 2d at 195.  The supreme court concluded that a representative of the deceased ward’s guardianship estate is confined to preserving the estate "until an executor or administrator is appointed,” thus barring the guardian from paying claims against the deceased ward’s estate.  
Gebis
, 186 Ill. 2d at 193-94.  

We find that the circumstances of the present case are distinguishable from those presented in 
Gebis
.  
Gebis
 dealt with a compensatory claim against a deceased ward’s guardianship estate, while the case at bar involves attorney fees awarded prior to the ward’s death, against a party other than the ward’s estate.  Specifically, the fees awarded to Dutton were assessed against a separate legal entity – the Trust, with Robert as trustee.  Because the Trust did not terminate upon decedent’s death or the closing of her guardianship estate, the reasoning applied in 
Gebis
 does not apply in this instance.  Furthermore, the circuit court entered the first order awarding fees to Dutton prior to decedent’s death and entered an amended award afterward.  While the trial court’s jurisdiction over decedent’s guardianship estate indeed terminated upon her death, the present matter involves the enforcement and modification of a valid order issued prior to her death and binding on a party other than the estate.  Accordingly, we find the holding of 
Gebis
 inapplicable.

The supreme court’s holding in 
Wellman
 is more relevant here.  In that case, the trial court granted the guardian 
ad litem’
s
 
petition for fees to be paid from the funds of the decedent, who had been a ward of a guardianship estate, was later restored to competency, and died months before the guardian filed her petition.  
Wellman
, 174 Ill. 2d at 343.  On appeal, the supreme court ruled that a guardianship estate terminates upon the ward’s death, but upheld the award of fees, finding that the guardian 
ad litem 
had been "properly awarded fees from the assets that she was appointed to protect,” and that the trial court had acted within its discretion in accordance with the Probate Act.  
Wellman
, 174 Ill. 2d at 352-53; 755 ILCS 5-27/4 (West 2002).  The court concluded that the validity of an order awarding fees for services rendered to an estate is not affected by the ward’s death.  
Wellman
, 174 Ill. 2d at 353-54.

In this case, the ward was still alive and the guardianship estate was still open at the time the trial court initially awarded fees to Dutton.  At the time the circuit court struck Robert’s motion and dismissed for lack of subject matter jurisdiction, Dutton had commenced enforcement proceedings against the Trust with Robert as trustee.  Moreover, under 
Wellman
, decedent’s death and the closing of her estate do not bar Dutton from collecting a portion of the assets she helped to protect.   Therefore, the trial court had subject matter jurisdiction over the enforcement proceedings, as the order Dutton sought to enforce had been entered prior to decedent’s death and the closing of her estate, and was valid regardless of the time it was issued, pursuant to 
Wellman
. 

Accordingly, we find that the circuit court’s order striking Robert’s motion and dismissing for lack of subject matter jurisdiction was in error, and we therefore vacate that order and reverse.

In addition to his argument that the circuit court was correct in finding that it lacked subject matter jurisdiction over the enforcement proceedings, Robert contends in his appellate brief that the court’s order awarding fees to Dutton was void in that the court lacked personal jurisdiction over the Trust and over Robert as trustee.

In addition to subject matter jurisdiction, a court must also have jurisdiction over the parties.  "Personal jurisdiction is acquired either by service of summons or by general appearance, and it is derived from actions of the person sought to be bound.”  
In re Marriage of Gorman
, 284 Ill. App. 3d 171, 178 (1996).  Here, both parties concede that no service of process was ever made on the Trust or on Robert in his capacity as trustee prior to the order awarding fees, and therefore we only need analyze whether the Trust, with Robert as trustee, entered a general appearance.  A general appearance waives the service of process requirement, as the purpose of service of process is to notify the party sought to be bound of the case, and a general appearance is recognition of the case’s existence by that party.  
Gorman
, 284 Ill. App. 3d at 178-79.  Under the Code of Civil Procedure, any motion or pleading by a party that contains either allegations, defenses, or both serves as a waiver to any objection to personal jurisdiction, thereby submitting that party to the jurisdiction of the court.  735 ILCS 5/2-301(a) (West 2002).  

A fundamental rule regarding personal jurisdiction and general appearance is that, unless a party makes a special appearance to object to a court’s jurisdiction prior to filing any pleading or motion, any objection to personal jurisdiction is considered waived.  735 ILCS 5/2-301(a) (West 2002).  A party may enter a special appearance in order to challenge the court’s jurisdiction over his or her person.  
In re Marriage of Stafeil
, 169 Ill. App. 3d 630, 633 (1988).  However, even where a party enters a special appearance, any subsequent general appearance waives any objection to jurisdiction.  
In re Marriage of Snider
, 305 Ill. App. 3d 697, 699 (1999).  A party cannot "invite the court to exercise its jurisdiction over him while he simultaneously denies that the court has such jurisdiction.”  
Poplar Grove State Bank v. Powers
, 218 Ill. App. 3d 509, 515 (1991).  Even where a court errs in ruling against a party in this matter, the party’s participation in the case waives any objection to personal jurisdiction.  
Goldberg v. Goldberg
, 27 Ill. App. 3d 94, 96 (1975).  

In his various objections and motions prior to the order awarding fees to Dutton, Robert was rarely, if ever, specific in stating the capacities in which he intended to appear and make the aforementioned filings.  He mainly referred to himself only as "respondent” in court papers and never explicitly stated whether he was appearing on behalf of the Trust, as trustee, or in his own individual capacity.  However, we find that some of the arguments Robert made in objecting to the petition for guardianship and in contesting the award of fees to Dutton indicate that he did in fact appear on behalf of the Trust and thus subjected it to the trial court’s personal jurisdiction.

In contesting the appointment of a guardian, Robert alleged that he had been assisting decedent in managing her finances and later that all of decedent’s assets had been transferred to the Trust.  He also argued that the Trust could not be challenged over its administration of decedent’s assets, that he "had full legal authority to make any decisions” on behalf of decedent, and that he could use the Trust and its capital to pay for decedent’s care.  Moreover, he alleged that the Senior Center’s motivation in filing its petition and serving process with the assistance of an armed officer was its extreme hostility toward the "successor trustee” of the Trust.  Such allegations of control over the Trust and the presentation of arguments on its behalf strongly indicate that Robert did indeed appear and plead on behalf of the Trust, with himself as trustee.  Robert also filed several motions during the enforcement proceedings contesting the propriety of the trial court’s orders rather than its authority to issue them. 

We note that Robert did indeed file several objections to the trial court’s personal jurisdiction, but only after his initial appearance, and he did so while simultaneously contesting the merits of the petition for guardianship and the award of fees to Dutton.  Accordingly, we conclude that, by entering pleadings on behalf of the Trust and otherwise participating in the proceedings below in a capacity that indicated at least some control over it, Robert waived any objection and submitted the Trust, with himself as trustee, to the circuit court’s personal jurisdiction.

For the foregoing reasons, we vacate the circuit court’s order striking Robert’s motion for change of judge and dismissing for lack of subject matter jurisdiction, and remand for further enforcement proceedings.

QUINN, P.J.,  and THEIS, J. concur.