*In re* ESTATE OF EVELYN PELLICO (Gregory Pellico, Plaintiff-Appellee, v. Robert I. Mork, Public Guardian for Du Page County and Temporary Guardian of Evelyn Pellico, *et al.*, Defendants-Appellants).—*In re* ESTATE OF EVELYN PELLICO (Gregory Pellico, Plaintiff-Appellant, v. Robert I. Mork, Public Guardian for Du Page County and Temporary Guardian of Evelyn Pellico, *et al.*, Defendants-Appellees).

Second District   Nos. 2—07—1045, 2—07—1058 cons.

Opinion filed September 10, 2009.

Robert G. Black, of Law Offices of Robert G. Black, and Robert I. Mork and Jennifer B. Martyn, both of Kuhn, Mitchell, Moss, Mork & Lechowicz, LLC, both of Naperville, for Estate of Evelyn Pellico, Robert I. Mork, and Alfred A. Spitzerri.

Bernard K. Weiler, of Mickey, Wilson, Weiler, Renzi & Andersson, P.C., of Aurora, for Gregory Pellico.

JUSTICE McLAREN delivered the opinion of the court:

In appeal No. 2—07—1045, defendants Robert I. Mork, public guardian for Du Page County (Public Guardian) and temporary guardian of Evelyn Pellico, now deceased (Evelyn), and Alfred A. Spitzzeri, guardian *ad litem* (GAL), appeal part of the circuit court's order of March 23, 2007, which denied their petition for fees, and part of the circuit court's judgment of September 17, 2007, which denied the Public Guardian's motion to reconsider and vacate the March 23, 2007, order and denied the GAL's notice of equitable lien. In appeal No. 2—07—1058, plaintiff, Gregory Pellico (Gregory), appeals part of the circuit court's judgment of September 17, 2007, in which the circuit court ordered that "there shall be no withdrawals, transfers or financial transactions on any accounts involving or titled, in whole or in part, to Evelyn Pellico or Peter Pellico." We consolidated these appeals. Regarding appeal No. 2—07—1045, we affirm in part and reverse in part the circuit court's March 23, 2007, order; we dismiss as moot the appeal as it relates to the September 17, 2007, order; and we remand for further proceedings. Regarding appeal No. 2—07—1058, we dismiss the appeal as moot.

Regarding appeal No. 2—07—1045, the Public Guardian and the GAL first argue that the circuit court erred by not ordering payment of their reasonable and necessary guardianship fees. They assert that, contrary to its determination, the circuit court had subject matter jurisdiction to order payment of guardianship fees because: (1) the statutory scheme sets forth the duties of a public guardian, allows for appointment of a temporary guardian on an emergency basis, and provides for payment of guardianship fees accordingly; (2) a plain reading of section 11a—18(d) of the Probate Act of 1975 (755 ILCS 5/11a—18(d) (West 2006)) reveals that it does not apply; (3) the use of the word "estate" in the Probate Act and in the court's order of July 31, 2006, is not meant to exclude trusts, but rather the assets in the ward's trust estate are meant to be directly and immediately protected under a temporary guardianship pursuant to section 11a—4 of the Probate Act (755 ILCS 5/11a—4 (West 2006)); (4) if section 11a—18(d) does indeed apply, the Probate Act does not and cannot require the filing of a separate action beyond a temporary guardianship in order to protect the assets of a disabled adult; and (5) the remainder of the circuit court's March 23, 2007, order is not based upon good authority. Second, the Public Guardian and the GAL argue that the circuit court erred in determining it had no personal jurisdiction over Gregory, including as trustee.

Regarding appeal No. 2—07—1058, Gregory argues:

"The court below correctly ordered that it had no jurisdiction over the Evelyn Pellico and Peter Pellico trusts. Having no jurisdiction, the circuit court erred by entering an order prohibiting [him] from accessing or otherwise managing, controlling or disbursing assets of the trusts on behalf of the trusts or its beneficiaries pending the outcome of the appeal.

A. The court below correctly ruled that it had no subject matter jurisdiction over the Evelyn Pellico or Peter Pellico trusts at the time of the guardian's appointment.

* * *

B. Even if the court had jurisdiction over the trusts at the time of the appointment of the guardian, any powers the guardian had over the trusts terminated upon the death of [Evelyn].

* * *

C. The court below correctly determined that it had no personal jurisdiction over the trustee.

* * *

D. Because the court order declining jurisdiction was correct, the court below erred when it imposed a stay against the

trustees' unfettered right to access, manage, control or distribute the assets of the trusts according to their terms."

## I. FACTS

On July 28, 2006, the Public Guardian filed an emergency petition for guardianship over the person and estate of Evelyn. The petition was filed at the request of Du Page County Senior Services, Anthony Pellico (one of Evelyn's sons), Manor Care Nursing Home of Hinsdale, and Hinsdale Hospital. The petition alleged the following. At the time of the filing of the petition, Evelyn was a gravely ill, 84-year-old patient at Hinsdale Hospital, suffering from dementia and advanced myelo-dysplastic syndrome, requiring frequent blood transfusions, and also suffering from a huge bed sore. Physicians deemed her condition terminal, and she was unable to make personal or financial decisions on her own due to her dementia. Evelyn was due to be discharged from the hospital as early as July 31, 2006. She had been a resident of Manor Care, a skilled nursing care facility in Hinsdale. Medical care-givers agreed, based upon Evelyn's medical needs, that upon release from the hospital, she should return to Manor Care.

The emergency petition also alleged that Evelyn had two sons, Anthony and Gregory Pellico. Anthony concurred with the medical caregivers that Evelyn should return to Manor Care and remain there for the remaining days of her life. However, Gregory wanted Evelyn to return to her apartment after her release from the hospital.

The emergency petition alleged that two trusts named Evelyn as beneficiary: the Evelyn Pellico Trust (purportedly worth $850,000 several years before the emergency petition was filed), and the Peter Pellico Trust[1] (purportedly worth $975,000 several years before the emergency petition was filed). Anthony and Gregory were co-trustees of both trusts at some point, but Gregory and his attorney denied Anthony access to those trusts and to any trust documents.[2] Gregory, who had been unemployed for several years, had been living in Eve-lyn's house and had complete access to the trusts. Anthony feared that Gregory had been living off the trusts and had been misap-propriating the trust assets. Therefore, on July 25, 2006, Anthony contacted Du Page County Senior Services, which in turn contacted the Du Page County Public Guardian. Hinsdale Hospital, Manor Care, and Anthony all believed the emergency petition needed to be filed. Because Evelyn was due to be discharged from the hospital as early as

---

[1]Peter Pellico was Evelyn's predeceased husband and father to Anthony and Gregory.

[2]The trust documents were not attached to the emergency petition and are not part of the appellate record.

July 31, 2006, the Public Guardian had no other means to guarantee Evelyn's welfare beyond filing the emergency petition for guardianship to protect her health and assets.

Gregory received notice of the emergency petition and appeared in open court on July 31, 2006, for the scheduled hearing. Gregory appeared *pro se*, representing himself to be Evelyn's son, power of attorney for Evelyn's property, and trustee for a trust of which Evelyn was the beneficiary. Gregory confirmed that he had been served. Gregory disputed that there was an emergency and requested "a continuance so I can get an attorney to represent my position."

That same day, Gregory filed a *pro se* responsive pleading entitled "Responsive Declaration of Gregory Pellico to Robert I. Mork's Emergency Petition for Guardianship of the Person and Estate of Evelyn Pellico." Gregory's pleading alleged that he had a discussion with a physician who stated that Evelyn's release from the hospital was not imminent and that Manor Care had previously abused Evelyn. Gregory's pleading denied that he was misappropriating funds and concluded that if any guardian were appointed for Evelyn it should be her sister, Lorraine Frederick.

On July 31, 2006, the circuit court, Judge Edward R. Duncan presiding,[3] appointed the Public Guardian as the temporary guardian over both the person and the estate of the ward. The circuit court order stated:

> "[T]his Court finds due cause to authorize the Public Guardian to access and control funds from any and all Trusts which name EVELYN PELLICO as beneficiary, including, but not limited to, the EVELYN PELLICO TRUST and the PETER PELLICO TRUST, and to freeze and prohibit any further financial activity, transactions, and withdrawals pertaining to the Trusts by the Co-Trustees, ANTHONY PELLICO and GREGORY PELLICO.

> \* \* \*

> 4. ROBERT I. MORK, Public Guardian for Du Page County and Temporary Guardian of the Person and Estate of EVELYN PELLICO, is hereby authorized to access and control any and all Trusts which name EVELYN PELLICO as beneficiary, including but not limited to, the EVELYN PELLICO TRUST and the PETER PELLICO TRUST, for the purpose of withdrawing and disbursing funds therefrom for the benefit and well-being of EVELYN PELLICO and her Estate, and for the purpose of opening Guardianship accounts with said funds, if the Public Guardian sees fit.

> \* \* \*

---

[3]Judge Kenneth Popejoy was on vacation at this time.

6. GREGORY PELLICO is hereby ordered to provide copies of any Trusts naming EVELYN PELLICO as the beneficiary to the Court, the Public Guardian, and ANTHONY PELLICO, along with a disclosure as to the location(s) of the funds in the Trusts, the amounts held in the Trusts, and copies of any and all bank or financial statements pertaining to the Trusts on or before August 7, 2006.

7. GREGORY PELLICO is further ordered to provide an Accounting to the Court, the Public Guardian, and ANTHONY PELLICO on or before August 21, 2006, concerning any and all disbursements from and financial transactions involving the Trusts for the past five (5) years."

The order also suspended any purported powers of attorney executed by Evelyn "pending further hearing regarding the validity of said Powers of Attorney." The order also appointed Fred Spitzzeri to act as guardian *ad litem* for Evelyn.

On August 9, 2006, the Public Guardian filed an emergency petition for rule to show cause against Gregory, alleging that Gregory refused to provide, *inter alia*, the trust and financial documents as ordered by the circuit court. The petition also alleged that Gregory had withdrawn funds from Evelyn's several accounts both before and after the circuit court's order of temporary guardianship.

On August 29, 2006, Gregory, now represented by counsel, filed an "emergency" motion to vacate the circuit court's order and an "emergency" motion to amend the circuit court's order. In the motion to vacate, Gregory argued that the Public Guardian had no authority under the Probate Act to serve as guardian over any estate assets covered by a power of attorney. In the motion to amend the circuit court's order, Gregory argued that the circuit court lacked both subject matter and personal jurisdiction over the two trusts and that it lacked personal jurisdiction over Gregory in his capacity as trustee. The case was continued three times by agreed orders.

Sometime before September 20, 2006, the Public Guardian secured Evelyn's return and readmission to Manor Care. On September 20, 2006, at the express request of Evelyn's physician, the Public Guardian filed a petition in the circuit court for a "Do Not Resuscitate" (DNR) order on the ward's behalf. The petition alleged that the ward's blood platelet count had become "life-threateningly low," that further emergency surgeries were not advisable, and that in the opinion of all treating physicians and healthcare workers, a DNR order was in the ward's best interests. The GAL agreed. After a hearing, the circuit court granted the petition.

On September 22, 2006, and again on October 23, 2006, agreed orders were entered reappointing the Public Guardian as temporary guardian of the ward, with letters of office to remain in full force and effect.

On October 27, 2006, over Gregory's objection, the circuit court granted the Public Guardian's petition to place the ward in hospice care.

On November 14, 2006, the Public Guardian filed a petition, amended on January 3, 2007, seeking his guardian fees for necessary work in this matter. The GAL also filed a petition seeking his fees.

On November 19, 2006, Evelyn passed away. On December 14, 2006, the circuit court ordered the guardianship of Evelyn terminated due to her death. However, the circuit court ordered the guardianship of the estate to remain open until further order of the court. The circuit court, Judge Popejoy presiding, ordered that no disbursements were to be made from Evelyn's assets that were placed in the control of the guardianship under the July 31, 2006, order.

On December 13, 2006, Gregory filed an objection to the petitions for fees, challenging the jurisdiction of the circuit court to award fees from either the Evelyn Pellico Trust or the Peter Pellico Trust to either the Public Guardian or the GAL, citing section 11a—18(d) of the Probate Act (755 ILCS 5/11a—18(d) (West 2006)). Gregory argued that the Public Guardian was required to file a separate "action" on behalf of the ward to compel distributions of assets from trusts. Gregory also argued that the circuit court did not have jurisdiction over the trusts through the guardianship because jurisdiction had terminated, along with the guardianship, upon the death of Evelyn.

On January 3, 2007, the Public Guardian filed an amended petition for fees, seeking $35,856.

On January 5, 2007, letters of office were issued in the probate division of the circuit court of Du Page County in a case entitled In re Evelyn Pellico, Deceased, No. 06—P—1225, appointing Gregory as representative of Evelyn's estate. (We note here that Gregory filed with this court a motion to take judicial notice of the Public Guardian's claim against Evelyn's estate in the above-mentioned case. We grant Gregory's motion and also take judicial notice of the case and its pleadings in their entirety as filed with the probate division of the circuit court of Du Page County. See *Turner-El v. West,* 349 Ill. App. 3d 475, 481 (2004) (appellate courts may take judicial notice of public records).)

On January 31, 2007, Gregory filed an objection to fees, citing jurisdictional prohibitions; a motion to vacate the July 31, 2006, order of temporary guardianship; and a motion to confirm the termination of guardianship due to the death of Evelyn.

On February 5, 2007, the circuit court entered an order regarding the petitions for fees. Regarding the Public Guardian, the circuit court found that all hours expended and all work performed were "reasonable, appropriate, and necessary." The circuit court found that the problems created by Gregory caused the Public Guardian's bill to be greater than otherwise and that the hours spent by the Public Guardian were "absolutely necessary to get us to a reasonable level in this case to get some resolution." The circuit court approved the Public Guardian's requested fees and expenses in the amount of $35,856. The circuit court also found the fees of the GAL reasonable and necessary and approved the GAL's fees in the amount of $7,000. However, the circuit court stayed any payment of the Public Guardian and GAL fees pending its determination "as to [the] jurisdictional issues raised by Gregory Pellico."

On February 15, 2007, the circuit court modified its February 5, 2007, order *nunc pro tunc*, to provide that no judgment be entered with respect to the award of guardianship fees and costs to either the Public Guardian or the GAL, pending its later ruling upon Gregory's objections to jurisdiction.

In its March 23, 2007, judgment (part of which the Public Guardian and the GAL appeal), the circuit court issued a memorandum and order ruling, in part, that it lacked subject matter jurisdiction over the trusts and that it lacked personal jurisdiction over Gregory in his capacity as trustee of the trusts. The circuit court reasoned that, while the Probate Act authorizes a temporary guardian to exercise control over the estate of a ward, a trust that names the ward as a beneficiary is not part of the ward's estate. The circuit court stated that such a trust is a separate legal entity that may be sued only through its trustee acting in his representative capacity. Citing section 11a—18(d) of the Probate Act, the circuit court reasoned that the only way a court and guardian can force distribution of funds from a trust is for the guardian to "bring an action on behalf of the ward to compel the trustee to exercise the trustee's discretion or to seek relief from an abuse of discretion." The circuit court interpreted the "bring an action" language within section 11a—18(d) to mean "bring a separate lawsuit."

In the same March 23, 2007, judgment, the circuit court deemed portions of Judge Duncan's judgment of July 31, 2006, void and vacated the portions of the judgment that authorized the Public Guardian to make distributions from the trusts, granted the Public Guardian control over the trusts, and restricted the trustee's powers. The March 23, 2007, judgment further stated that when Gregory appeared at the July 31, 2006, hearing, filed his *pro se* response, and

asked for a continuance to obtain an attorney, he did not waive an objection to personal jurisdiction because, later, with the benefit of counsel, he filed a motion objecting to personal jurisdiction.

However, the circuit court rejected Gregory's argument that Evelyn's death precluded it from awarding guardianship fees. The circuit court cited section 13—5(l) of the Probate Act (755 ILCS 5/13—5(*l*) (West 2006)) as providing for the award of reasonable and appropriate fees to a temporary guardian. The circuit court also cited *In re Estate of Wellman*, 174 Ill. 2d 335 (1996), to support its ruling that the circuit court retains jurisdiction to award GAL fees. Nevertheless, the circuit court ruled that it lacked the authority to award such fees to the Public Guardian and the GAL because it lacked subject-matter jurisdiction over the trusts and the funds from those trusts.

On April 3, 2007, the GAL moved to impose an equitable lien or constructive trusts on the trust funds to satisfy his fees. On April 20, 2007, the Public Guardian filed a motion to reconsider or vacate the circuit court's March 23, 2007, order. Gregory then filed a motion to clarify the circuit court's March 23, 2007, order to allow him immediate access to and control of the trust assets, or to compel the Public Guardian to turn over the assets.

On July 13, 2007, the Public Guardian filed a claim for guardianship fees against Evelyn's estate in the probate court proceeding.

On August 27, 2007, the circuit court ordered that no further financial transactions take place on any of the ward's accounts, including the guardianship account established by the Public Guardian at LaSalle Bank pursuant to the circuit court's July 1, 2006, order. On September 10, 2007, the Public Guardian filed a petition for rule to show cause against Gregory for his continuing actions to attempt to wrongfully access funds and shares of stock, despite the court's order to the contrary.

On September 12, 2007, Gregory, as representative for Evelyn's estate, disallowed the Public Guardian's and the GAL's claims for fees in the probate court proceeding.

On September 17, 2007, the circuit court denied the GAL's notice of equitable lien. The circuit court also denied the Public Guardian's motion to reconsider and vacate its March 23, 2007, order. Upon its own motion, the circuit court ordered:

> "There shall be no withdrawals, transfers, or financial transactions from any accounts involving or titled, in whole or in part, to Evelyn Pellico or Peter Pellico, including, but not limited to, any trust accounts, and the guardianship checking account at LaSalle Bank, for a period of 30 days or as otherwise ordered by this Court, pending an appeal by any party in 30 days."

The circuit court stated that its order that day was "final and appealable." All parties appeal the circuit court's September 17, 2007, order. See 210 Ill. 2d R. 304(b)(1).

The Public Guardian and the GAL filed timely notices of appeal from the orders of March 23, 2007, and September 17, 2007. They both moved for a stay pending appeal.

On September 24, 2007, the Public Guardian filed a supplemental petition for an additional $27,825.75 in guardianship fees incurred for time expended meeting the directives of the circuit court and fully briefing all pending pleadings. The circuit court granted the Public Guardian's motion for a stay pending appeal.

## II. ANALYSIS

On appeal, the Public Guardian and the GAL argue primarily that the circuit court erred by not ordering payment of their reasonable and necessary guardianship fees. They base their argument on two separate subarguments: (1) that the circuit court had subject matter jurisdiction to order payment of guardianship fees; and (2) that the circuit court had personal jurisdiction over Gregory, including as trustee. We will address each argument separately.

■ However, before we address the merits of this appeal, we address Gregory's contention that the Public Guardian and GAL's "[b]rief makes inaccurate assertions concerning the rulings of the court below and improperly casts appellee, Gregory Pellico, in an unfavorable light based upon allegations not supported by the record." First, Gregory contends that the Public Guardian and GAL inaccurately assert in their brief that "the court below determined that it was without jurisdiction to award fees to the Public Guardian or the [GAL]" when actually the circuit court "ruled it was without jurisdiction to order those fees to be paid from the assets of the Trusts." Because Gregory does not cite a page in the Public Guardian and GAL's brief, we cannot find where they made this alleged inaccurate statement. However, on page 22 of the Public Guardian and GAL's brief we have found an accurate representation of the circuit court's ruling, wherein they state: "In reaching its determination that it lacked subject-matter jurisdiction over the trusts, and therefore could not order payment to the Public Guardian and GAL or their necessary and reasonable fees, the circuit court based its ruling on its interpretation of section 11(a)—18(d) of the Probate Act of 1975 (the Probate Act)." Accordingly, we disagree with Gregory that the Public Guardian and GAL inaccurately represented the circuit court's holding.

■ Next, Gregory asserts that the Public Guardian and GAL inaccurately state in their brief that the circuit court "ordered the pay-

ment of [their] fees, but stayed enforcement of that order until the final determination of the jurisdictional issues." Again, Gregory fails to cite to any page in the Public Guardian and GAL's brief. However, a statement we found in the Public Guardian and GAL's brief regarding this issue does not differ from Gregory's version and is supported by the record. On page 16 of the Public Guardian and GAL's brief, they state:

> "The court therefore by order of February 5, 2006, approved the fees and expenses of the Public Guardian in the amount of $35,856 as fair and reasonable. [Citation to the record.] The court further approved the petition for fees of the [GAL] in the total sum of $7,000, as likewise reasonable and necessary. [Citation to the record.] Nevertheless, the court 'stayed' any payment pending its determination 'as to [the] jurisdictional issues raised by Gregory Pellico.' [Citation to the record.]"

This statement is supported by the record and the circuit court's February 5, 2006, order. While Gregory is correct that no judgment was entered on the award of fees, Gregory fails to cite to any place in the Public Guardian and GAL's brief where they make an assertion to the contrary. Therefore, Gregory's complaint is meritless.

■ Next, Gregory contends that the Public Guardian refers to allegations made against Gregory in the petition for temporary guardianship. Gregory specifically objects to the allegations that he misappropriated funds of the trusts and "that he will not reveal any information to Anthony [Gregory's brother and co-trustee] regarding the trusts." Gregory argues that these allegations were not verified. Gregory also complains that the Public Guardian refers to allegations in petitions for rules to show cause filed by the Public Guardian but never heard by the circuit court. We assure Gregory that when analyzing the issues of this appeal we will consider only the facts relevant to those issues. We now address the merits of this appeal.

## A. The Circuit Court Had Original Subject Matter Jurisdiction Over the Trusts

Essentially, the Public Guardian and the GAL argue that the circuit court erred when it ruled in its March 23, 2007, judgment that it lacked subject matter jurisdiction to order payment of guardianship fees from the funds of the trusts.[4] Gregory argues, both in his appellee's brief and in his own appeal, that the circuit court correctly ruled

---

[4]The subarguments of the Public Guardian and the GAL are as follows: (1) the statutory scheme sets forth the duties of a public guardian, allows for appointment of a temporary guardian on an emergency basis, and provides for payment of guardianship fees accordingly; (2) a plain reading of section 11a—

that it lacked subject matter jurisdiction over the trusts because section 11a—18(d) of the Probate Act restricted its power over the trusts at the time of the Public Guardian's appointment.

Subject matter jurisdiction refers to a court's power to adjudicate the general question involved and to grant the relief requested. *In re M.M.*, 156 Ill. 2d 53, 64 (1993); *In re Dontrell H.*, 382 Ill. App. 3d 612, 616-17 (2008). In the general civil context, circuit courts enjoy, with limited exceptions, "original jurisdiction of all justiciable matters." Ill. Const. 1970, art. VI, §9; see *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 529-30 (2001). As our supreme court explained in *Steinbrecher*:

> "Effective January 1, 1964, an amendment to article VI replaced limited jurisdiction: 'Circuit Court[s] shall have unlimited original jurisdiction of all justiciable matters.' Ill. Const. 1870, art. VI, §9 (amended 1964); accord Ill. Const. 1970, art. VI, §9 ('Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction'). This amendment created a single integrated trial court vested with jurisdiction to adjudicate all controversies.
>
> \*\*\*
>
> An administrative agency, like the pre-1964 circuit courts, is powerless to act unless statutory authority exists. *City of Chicago*, 65 Ill. 2d at 112. An administrative agency is a statutory creature with no general or common law power. *City of Chicago*, 65 Ill. 2d at 112-13. Conversely, a circuit court is a court of general jurisdiction, which need not look to the statute for its jurisdictional authority." *Steinbrecher*, 197 Ill. 2d at 529-30.

Further, once a circuit court obtains jurisdiction, an order will not be rendered void merely because the court makes an error of law in rendering its judgment. *People v. Davis*, 156 Ill. 2d 149, 157 (1993).

---

18(d) of the Probate Act (755 ILCS 5/11a—18(d) (West 2006)) reveals that it does not apply; (3) the use of the word "estate" in the Probate Act and in the court's order of July 31, 2006, is not meant to exclude trusts, but rather the assets in the ward's trust estate are meant to be directly and immediately protected under a temporary guardianship pursuant to section 11a—4 of the Probate Act (755 ILCS 5/11a—4 (West 2006)); (4) if section 11a—18(d) does indeed apply, the Probate Act does not and cannot require the filing of a separate action beyond a temporary guardianship in order to protect the assets of a disabled adult; and (5) the remainder of the circuit court's March 23, 2007, order is not based upon good authority. Similarly, Gregory's subarguments address how section 11a—18(d) limited the circuit court's subject matter jurisdiction. We do not specifically address these subarguments, except for the Public Guardian and GAL's first subargument, because we agree with their main argument that the circuit court had subject matter jurisdiction over the trusts, notwithstanding section 11a—18(d) of the Probate Act.

"Accordingly, a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law[,] or both." *Davis*, 156 Ill. 2d at 157.

■ Accordingly, in this case, the circuit court erred when it ruled that it lacked subject matter jurisdiction. Although the circuit court and the parties attempt to determine whether the circuit court had subject matter jurisdiction by looking to section 11a—18(d) of the Probate Act, neither that statute's section nor any other statute restricted the circuit court's jurisdictional authority. See *Steinbrecher*, 197 Ill. 2d at 529-30. The circuit court, a court of general jurisdiction, had original jurisdiction of all justiciable matters (Ill. Const. 1970, art. VI, §9), including the one at bar, and did not need to look to the Probate Act for jurisdictional authority. See *Steinbrecher*, 197 Ill. 2d at 529-30. Whether the circuit court acted improperly pursuant to section 11a—18(d) of the Probate Act was a question of whether it erred in determining the law, not a question of subject matter jurisdiction. See *In re Marriage of Chrobak*, 349 Ill. App. 3d 894, 897 (2004). Accordingly, we agree with the Public Guardian and the GAL that the circuit court erred when it determined that it lacked subject matter jurisdiction to order payment of guardianship fees, because it, indeed, had subject matter jurisdiction over the issue and the trusts.

To support Gregory's argument that section 11a—18(d) of the Probate Act limited the circuit court's jurisdiction, Gregory cites *In re Estate of Gebis*, 186 Ill. 2d 188 (1999), for the proposition that "[w]hen a court's power to act is controlled by statute, the circuit court is governed by rules of limited jurisdiction and must proceed by the statute's stricture." We note that the circuit court also relied on *Gebis*. The circuit court's and Gregory's reliance on *Gebis* was and is misplaced.

In 1999, prior to our supreme court's decision in *Steinbrecher*, the court in *Gebis* limited a circuit court's jurisdiction where the "circuit court's power to act is controlled by statute." *Gebis*, 186 Ill. 2d at 193. The *Gebis* court reasoned that in those cases, "the circuit court is governed by the rules of limited jurisdiction and must proceed within the statute's strictures." *Gebis*, 186 Ill. 2d at 193. However, *Gebis* relied on *In re M.M.*, 156 Ill. 2d 53 (1993), which was overruled regarding its subject matter jurisdiction holding by three subsequent supreme court cases, *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 552-54 (2003), *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 337 (2002), and *Steinbrecher*, 197 Ill. 2d at 529-30 (the *Belleville* trio). In *In re Alex T.*, 375 Ill. App. 3d 758 (2007), we explained the holdings of the *Belleville* trio as follows:

"Since the *Steinbrecher* decision, the supreme court has continued to reject the principle of statutorily limited jurisdiction in general civil cases while accepting it in criminal cases, at least those involving the trial court's authority to impose a specific sentence. On the civil side, the supreme court in *Belleville Toyota* and *Graf* reaffirmed its position that the legislature cannot limit the circuit court's jurisdiction." *Alex T.*, 375 Ill. App. 3d at 762. Therefore, the citation to *Gebis* for the proposition that the circuit court's subject matter jurisdiction was limited by section 11a—18(d) of the Probate Act fails. The circuit court had original subject matter jurisdiction over the trusts. See *Steinbrecher*, 197 Ill. 2d at 529-30.

## B. The Circuit Court Had Personal Jurisdiction Over the Trustee, Gregory Pellico

On appeal, the Public Guardian and the GAL also argue that the circuit court erred by finding that it lacked personal jurisdiction over Gregory as trustee of the Evelyn and Peter Pellico Trusts. The Public Guardian and the GAL contend that Gregory was properly served as an interested person and that he waived objection to personal jurisdiction by filing responsive pleadings and motions and representing himself to the court as the trustee before objecting to personal jurisdiction. Not surprisingly, Gregory argues, both in his appellee's brief and in his own appeal, that the circuit court lacked personal jurisdiction over him as the trustee because no service of process was served on him as the trustee, he first appeared as a *pro se* litigant, he requested a continuance to obtain counsel, and objection to jurisdiction was made "at the first practicable opportunity."

We review *de novo* a circuit court's dismissal of a complaint for lack of personal jurisdiction. *KSAC Corp. v. Recycle Free, Inc.*, 364 Ill. App. 3d 593, 594 (2006). A circuit court can acquire personal jurisdiction over a party by the consensual authority of a voluntary appearance. *GMB Financial Group, Inc. v. Marzano*, 385 Ill. App. 3d 978, 984 (2008).

■ Before 2000, a defendant seeking to appear before the circuit court to contest the exercise of personal jurisdiction was obliged to file a special appearance pursuant to section 2—301(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2—301(a) (West 1998)). Effective January 1, 2000, the amended section 2—301(a), and the entirely new section 2—301(a—5) (see 735 ILCS 5/2—301(a—5) (West 2006)), contain an explicit waiver provision that now provides for waiver of an objection based on personal jurisdiction only if the party files a responsive pleading or a motion (other than seeking an extension of time to answer or otherwise appear) before filing a motion asserting the jurisdictional objection. *KSAC*, 364 Ill. App. 3d at 595. In *KSAC* this

court explained: "A pleading 'consists of a party's formal allegations of his claims or defenses,' and a motion is 'an application to the court for a ruling or an order in a pending case.' " *KSAC*, 364 Ill. App. 3d at 597, quoting *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 407 (2005).

In this case Gregory not only appeared before the circuit court, albeit *pro se*, but filed a responsive pleading to the Public Guardian's emergency petition for guardianship, entitled a "Responsive Declaration of Gregory Pellico to Robert I. Mork's Emergency Petition for Guardianship of the Person and Estate of Evelyn Pellico," before his attorney filed an objection to personal jurisdiction. This "Responsive Declaration" contended that, if any guardian were appointed on Evelyn's behalf, it should be her sister. Also, prior to Gregory's attorney's objection to jurisdiction, Gregory represented himself as trustee of his mother's "trust" to the circuit court. Because Gregory filed a responsive pleading and represented himself as trustee to the circuit court before his attorney objected to personal jurisdiction, Gregory waived any objection to personal jurisdiction. See 735 ILCS 5/2—301(a), (a—5) (West 2006).

Further, we note that *pro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys. *Steinbrecher*, 197 Ill. 2d at 528. Therefore, the fact that Gregory was not represented by counsel when he appeared before the circuit court and filed a responsive pleading does not affect his waiver of any objection to personal jurisdiction. See *Steinbrecher*, 197 Ill. 2d at 528; see also 735 ILCS 5/2—301(a) (West 2006). Accordingly, the circuit court erred by determining that it lacked personal jurisdiction over the trusts at issue.

C. The Circuit Court Retained the Power to Award Fees to the Public Guardian and the GAL After Evelyn's Death

■ Having determined that the circuit court had original subject matter jurisdiction over the trusts and personal jurisdiction over Gregory as trustee, we must now determine whether the circuit court retained the power to award fees to the Public Guardian and the GAL.

The Public Guardian and the GAL argue that they were entitled to fees because sections 13—5(*l*) and 11a—10(a) of the Probate Act provide for the award of reasonable compensation for temporary guardians and GALs, respectively. See 755 ILCS 5/13—5(*l*), 11a—10(a) (West 2006). In contrast, Gregory argues both in his appellee's brief and in his own appeal that, even if the circuit court had subject matter jurisdiction over the trusts at the time of the appointment of the guardian, any power the guardian had over the trusts terminated

upon the death of the ward. Gregory cites, *inter alia*, section 24—19(a) of the Probate Act (755 ILCS 5/24—19(a) (West 2006)), *Gebis*, 186 Ill. 2d at 193, and *Wellman*, 174 Ill. 2d at 350-51.

Because this issue is one of statutory construction, we will review it *de novo*. See *Alvarez v. Pappas*, 229 Ill. 2d 217, 235 (2008). In construing a statute, we must ascertain and give effect to the legislature's intent in enacting the statute. See *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). The statutory language is the best indication of the drafters' intent, and the language should be given its plain, ordinary, and popular meaning. *Alvarez*, 229 Ill. 2d at 235.

Section 13—5(*l*) of the Probate Act provides:

> "When the public guardian is appointed temporary guardian of a disabled adult pursuant to an emergency petition under circumstances where the court finds that the immediate establishment of a temporary guardianship is necessary to protect the disabled adult's health, welfare, or estate, *the public guardian shall be entitled to reasonable and appropriate fees*, as determined by the court for the period of temporary guardianship, including fees directly associated with establishing the temporary guardianship." (Emphasis added.) 755 ILCS 5/13—5(*l*) (West 2006).

Similarly, section 11a—10(a) of the Probate Act provides that a circuit court may allow a GAL "reasonable compensation." 755 ILCS 5/11a—10(a) (West 2006).

The plain and ordinary language of these statutes grants a circuit court the authority to award fees to a temporary guardian and a GAL. Our supreme court's decision in *Wellman* supports this conclusion. In *Wellman*, the circuit court granted the GAL's petition for fees to be paid from the funds of the decedent, who had been a ward of a guardianship estate and who died months before the guardian filed her petition. *Wellman*, 174 Ill. 2d at 343. On appeal, our supreme court ruled that a guardianship estate terminates upon the ward's death, but upheld the award of GAL fees, finding that the GAL had been "properly awarded fees from the assets that she was appointed to protect" and that the circuit court had acted within its discretion in accordance with the Probate Act because the Probate Act expressly provided for the award of "reasonable compensation" to GALs. *Wellman*, 174 Ill. 2d at 352-53, citing 755 ILCS 5/27—4 (West 1992). Our supreme court reasoned that the validity of an order awarding a GAL fees for services rendered to an estate is not affected by the ward's death. *Wellman*, 174 Ill. 2d at 353-54.

We see no reason why the reasoning in *Wellman* regarding GAL fees should not be extended to the fees of a temporary guardian. Sec-

tion 13—5(*l*) provides for the award of "reasonable and appropriate fees" for temporary guardians. 755 ILCS 5/13—5(*l*) (West 2006). Therefore, the validity of an order awarding a temporary guardian fees for services rendered to an estate is not affected by the ward's death. See *Wellman*, 174 Ill. 2d at 353-54.

■ Yet, Gregory contends that once Evelyn died, neither the Public Guardian nor the GAL had the ability to make claims over the trusts because the guardianship terminated, the Public Guardian and the GAL became creditors of Evelyn's probate estate,[5] "the issues raised by the [Public Guardian and the GAL] are moot," and they both lack standing to make any claims against Evelyn's estate. Gregory cites section 24—12 of the Probate Act, which provides:

> "Termination of office of a representative of a ward. The office of a representative of a ward terminates when the ward if a minor attains his majority, when the letters of a representative are revoked, when the representative dies or, subject to Section 24—19, when the ward dies." 755 ILCS 5/24—12 (West 2006).

The plain and ordinary meaning of this provision is that once Evelyn died, the guardianship terminated and the Public Guardian could no longer act on her behalf. See *Wellman*, 174 Ill. 2d at 350-51. Nothing in this provision addresses whether a circuit court may award fees to a temporary guardian or a GAL after a ward's death.

■ Gregory also cites the following sections of the Probate Act to support his arguments:

> "Upon the death of the ward, the public guardian shall turn over to the court-appointed administrator all of the ward's assets and an account of his receipt and administration of the ward's property." 755 ILCS 5/13—5(h) (West 2006).

> "Without order of appointment and until the issuance of letters testamentary or of administration or until sooner discharged by the court, a representative of the estate of a deceased ward has the powers and duties of an administrator to collect." 755 ILCS 5/24—19(a) (West 2006).

The plain and ordinary meaning of these provisions is that, once a guardian is discharged by the circuit court, he no longer has control of the ward's assets and no longer has the power to collect fees or other costs owed to the ward's estate or to pay claims filed against the ward's estate. See *Gebis*, 186 Ill. 2d at 193-94. However, nothing in these provisions addresses the circuit court's power to award fees to a temporary guardian or a GAL after a ward's death.

---

[5]We take judicial notice of the fact that the Public Guardian filed a claim for fees as a creditor of the deceased ward's estate in probate court.

Gregory also cites *Gebis*, 186 Ill. 2d at 193, for the proposition that, "upon the ward's death, both the guardianship and the circuit court's jurisdiction to supervise the ward's estate necessarily terminates." We already pointed out that *Gebis* inaccurately states the law of circuit court jurisdiction. In any event, Gregory fails to include the exception stated by the *Gebis* court in the following paragraph: "the trial court supervising the guardianship estate is powerless to adjudicate such claims, as jurisdiction lies only where the court can grant *the particular relief requested.*" (Emphasis in original.) *Gebis*, 186 Ill. 2d at 194. In this case, sections 13—5(*l*) and 11a—10(a) of the Probate Act provided that the circuit court had the power to grant the Public Guardian (acting as temporary guardian) and the GAL the "particular relief requested," that being, reasonable fees. Thus, the language Gregory quotes from *Gebis* does not apply to this case.

Gregory also cites *Wellman* and *In re Estate of Burgeson*, 125 Ill. 2d 477 (1998), for the proposition that a guardian has no legally cognizable interest, and thus no standing, to assert claims against the estate of the ward or any of its assets when the ward dies. The facts in *Wellman* and *Burgeson* are distinguishable from the facts in this case. In *Wellman* and *Burgeson*, the guardians were making claims against the estates of the deceased wards on behalf of others; they were not seeking their own fees pursuant to section 13—5(l) of the Probate Act, as the Public Guardian sought in this case. Further, *Wellman* expressly provided for such fees after the death of the ward for GALs because the Probate Act contains a provision for the award of reasonable fees to GALs. *Wellman*, 174 Ill. 2d at 353-54. Section 13—5(l) is a parallel provision allowing for the award of reasonable fees to temporary guardians. Therefore, *Wellman* supports the Public Guardian's argument rather than Gregory's argument.

### D. The Public Guardian's and GAL's Appeals of the September 17, 2007, Judgment Are Moot

■ The Public Guardian appeals the part of the circuit court's September 17, 2007, judgment that denied his motion to reconsider and vacate the March 23, 2007, judgment denying his petition for fees. Our prior grant of the relief sought by the Public Guardian effectively moots this issue and, therefore, we dismiss this part of the Public Guardian's appeal. See *Oak Grove Jubilee Center, Inc. v. City of Genoa*, 347 Ill. App. 3d 973, 977 (2004).

Additionally, the GAL appeals the part of the circuit court's September 17, 2007, judgment that denied his notice of equitable lien. Because we have granted the relief sought by the GAL, there is no need for an equitable lien, and this issue is effectively moot. Therefore,

we dismiss this part of the GAL's appeal. See *Oak Grove Jubilee Center, Inc.,* 347 Ill. App. 3d at 977.

## E. Gregory's Appeal Is Dismissed as Moot

■ Gregory's final argument in his appeal is that, "[b]ecause the court order declining jurisdiction was correct, the court below erred when it imposed a stay against the trustees' unfettered right to access, manage, control or distribute the assets of the trusts according to their terms." Gregory urges this court to "reverse that portion of the circuit court's September 17, 2007, order that in any way prohibits the trustees of those Trusts from the unfettered right to control, manage, withdraw, invest, distribute, or otherwise dispose of the assets of the Trusts according to the terms of the Trusts, from any claim or interest of the Public Guardian, and to remand this matter to the court below with instructions to enter such orders as shall make the intent of the court's mandate clear to all banks, transfer agents, brokers and investment companies holding assets of the Trusts and that they are to follow the directions of the trustees of those Trusts with respect to the disposition of the trust assets notwithstanding any prior orders heretofore entered in the guardianship matter below." Gregory seeks, in the alternative, a modification of the September 17, 2007, order and the stay imposed on January 3, 2008, "to limit the effect of any stay or freeze against the assets of the Trusts to such amounts as are in controversy."

We have already decided that Gregory's main contention, that "the court order declining jurisdiction was correct," is erroneous. Therefore, Gregory's appeal, as the reverse of the argument of the Public Guardian and the GAL in their appeal, is moot. Further, the portion of the September 17, 2007, order Gregory addresses prohibited Gregory from withdrawing, transferring, or engaging in financial transactions on any of the trust accounts "for a period of 30 days or as otherwise ordered by this court, pending an appeal by any party in 30 days." Because the 30 days have passed and we have already decided the issues on appeal, this issue regarding the stay issued by the circuit court in its September 17, 2007, order is moot for this reason as well. In addition, Gregory failed to appeal the circuit court's January 3, 2008, order. Therefore, we may not review it. See 155 Ill. 2d R. 303(b)(2); *McGill v. Garza,* 378 Ill. App. 3d 73, 75 (2007). Because Gregory's appeal is moot it must be dismissed. See *Oak Grove Jubilee Center, Inc.,* 347 Ill. App. 3d at 977.

## III. CONCLUSION

In conclusion, regarding appeal No. 2—07—1045, the circuit court erred when it ruled on March 23, 2007, that, although the Public

Guardian and the GAL were entitled to fees, it lacked the authority to award fees to the Public Guardian and the GAL because it lacked subject matter and personal jurisdiction over the trusts and the funds obtained from those trusts. Therefore, we affirm that portion of the March 23, 2007, order finding that the court had the "power to approve" both the Public Guardian and the GAL fees; and we reverse the remainder of the March 23, 2007, order, which vacated Judge Duncan's order of July 31, 2006. We further remand this cause for the payment of fees approved by the circuit court in the amount of $35,826 to the Public Guardian and $7,000 to the GAL.[6] Because we have granted sufficient relief as to the March 23 order, the Public Guardian's and the GAL's appeals of portions of the circuit court's September 17, 2007, judgment are dismissed as moot.

Regarding appeal No. 2—07—1058, the appeal is dismissed as moot. The circuit court's January 3, 2008, stay, which prevents the trustees from accessing any funds in accounts "involving or titled, in whole or in part, to Evelyn Pellico or Peter Pellico," will remain in full force and effect until the fees approved by the circuit court are paid to the Public Guardian and the GAL.

No. 2—07—1045, Affirmed in part and reversed in part; appeal dismissed in part; cause remanded.

No. 2—07—1058, Appeal dismissed.

ZENOFF, P.J., and SCHOSTOK, J., concur.

---

[6]We note that the Public Guardian's September 24, 2007, petition for an additional $27,825.75 in guardianship fees, which was stayed by the circuit court pending appeal, is not before this court.