2020 IL App (2d) 190394-U
No. 2-19-0394
Order filed April 24, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CROSSTOWN PROPERTY MANAGEMENT CORP., | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CH-643 |
| CARMEN PINNAVARIA, a/k/a Carmelo Pinnavaria, Individually and as Trustee under a Declaration of Trust Dated December, 21, 1994, HARRIS TRUST AND SAVINGS BANK, n/k/a BMO Harris Bank, MOTOROLA EMPLOYEES CREDIT UNION, n/k/a Andigo Credit Union, and UNKNOWN OWNERS AND CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Carmen Pinnavaria, a/k/a Carmelo Pinnavaria, Individually and as Trustee under a Declaration of Trust Dated December, 21, 1994, Defendant-Appellant; Motorola Employees Credit Union, n/k/a Andigo Credit Union, Defendant-Appellee). | ) ) ) ) ) ) ) | Honorable Michael J. Chmiel, Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's order on remand complied with our mandate, the court was not biased against defendant, and the order closing the case was proper. Affirmed.

¶ 2 This case is before us a second time. Specifically, in 2018, we considered a *pro se* appeal by Carmen Pinnavaria, a/k/a Carmelo Pinnavaria, the property owner in this mechanic's-lien foreclosure case, who appealed after the plaintiff, Crosstown Property Management Corp. (Crosstown), reached a settlement with Motorola Employees Credit Union, n/k/a Andigo Credit Union (Andigo), a defendant-mortgagee. On appeal, Pinnavaria argued, among other things, that the court did not give him a fair opportunity to file counterclaims, which would have prevented the voluntary dismissal. We agreed, holding that, although the trial court properly struck defendant's *pro se* pleadings as incoherent, it abused its discretion in refusing to give defendant's counsel, whom the court had encouraged defendant to retain, an opportunity to amend them; thus, we vacated the court's judgment and remanded the cause. *Crosstown Properties v. Pinnavaria*, 2018 IL App (2d) 170895-U, ¶ 21. We also held that the court was not biased against defendant, and we noted that *pro se* litigants must follow the same rules as litigants represented by counsel. *Id.* ¶¶ 15, 18, 21, 25.

¶ 3 Upon remand, plaintiff's counsel moved to withdraw, which the court granted, and the court gave defendant leave to file amended counterclaims. Defendant, who proceeded *pro se*, never filed counterclaims. Instead, defendant filed various motions, seeking documents and requesting that the order allowing plaintiff's counsel's withdrawal be vacated. The court struck and/or denied defendant's motions, noted that the case had "run its course and, with nothing pending," should be closed. Defendant, *pro se*, appeals.

¶ 4                              I. BACKGROUND

¶ 5 A full recitation of the underlying facts concerning the lawsuit and proceedings prior to the first appeal may be found in our earlier decision. *Id.* In summary, for context here, we note that,

in 2015, plaintiff filed a two-count complaint against defendant (in his individual capacity and in his capacity as trustee of a land trust), Harris Trust & Savings Bank, n/k/a BMO Harris Bank (which had no relevant part in these proceedings), and Andigo. The first count sought to foreclose a mechanic's lien, while the second count was for breach of contract. Plaintiff alleged that defendant owed it $15,129.28 for work performed, and plaintiff recorded a claim for a lien in that amount. Andigo appeared and answered, claiming a mortgage lien and attaching a copy of the mortgage, which contained a clause requiring the mortgagor to either pay or defend against claims (such as mechanic's liens) that might result in liens with priority over Andigo's mortgage lien.

¶ 6 Defendant, *pro se*, filed counterclaims, which plaintiff successfully moved to strike as not following any recognizable legal format and, essentially, being too confusing to warrant a response. The court granted the motion, and defendant's later attempts to file pleadings had similar results. The court described defendant's filing as being "incoherent," noted that the law accords no special privileges to *pro se* litigants, and, on multiple occasions, suggested that defendant would be well-advised to retain an attorney. Defendant did retain counsel, but when counsel sought leave to file an amended counterclaim and an amended answer, the court ultimately denied defendant leave to file further pleadings. On October 10, 2017, the court entered an order, stating that the cause was dismissed with prejudice because Andigo had paid plaintiff's claim, intended to recover its payment from Pinnavaria under the lien clause of the mortgage, and that the court had no power to prevent a voluntary dismissal. Defendant's counsel withdrew with leave of court. Defendant appealed.

¶ 7 As noted, in the first appeal, we held that the trial court did not err in finding defendant's *pro se* filings incoherent, and the court was not biased against defendant. *Id.* ¶¶ 15, 18, 21, 25. However, we also held that, had defense counsel been permitted to craft and file counterclaims,

plaintiff's voluntary dismissal of the complaint might have been prevented; thus, the court's order denying defendant leave to amend the counterclaims resulted in an injustice to defendant and an abuse of discretion. *Id.* ¶¶ 19, 20-23. We vacated the voluntary dismissal of the complaint, and the denial of the motions for leave to amend, and we remanded the cause. *Id.* ¶ 25. Moreover, we noted that " *** [defendant]'s counsel has withdrawn. If [defendant] appears *pro se* on remand, and if his amended pleadings are no better than his original pleadings, the trial court may strike them and re-enter the voluntary dismissal." *Id.* ¶ 25, n.1.

¶ 8 On January 11, 2019, our mandate having issued, the case returned to the trial court. On January 24, 2019, plaintiff's counsel moved to withdraw, representing that plaintiff could not afford an attorney. On February 1, 2019, at hearing on the motion, plaintiff's counsel asserted that plaintiff was no longer in business. The court granted the motion, over defendant's objection that plaintiff's counsel should answer the counterclaims, noting that plaintiff was essentially "defunct," and did not exist except, perhaps, for purposes of closing out its affairs. As counsel did not have a client to give him instructions or with the economic means to pay him, the court allowed plaintiff's counsel to withdraw. The court gave plaintiff, "to whatever extent they exist," until February 22, 2019, to file a supplemental appearance. Moreover, in accordance with our mandate, the court gave defendant until March 25, 2019, to file amended counterclaims. Although defendant asserted that he wished to "reinstate," as opposed to "refile," counterclaims and that they would likely be the same as the ones previously filed, he ultimately claimed that he *would* file amended counterclaims. The court reminded defendant that he needed to formulate counterclaims that stated causes of action and, further, that did so while complying with Illinois Supreme Court rules concerning non-frivolous pleadings.

¶ 9 Defendant did not file amended counterclaims. Rather, on February 6, 2019, he filed a "Petition Motion/or Leave to produce documents of settlement between [Plaintiff] and Andigo." On February 25, 2019, he filed a 23-page "Petition for leave motion to withdraw should be Vacate," recounting the procedural history of the case and arguing that the court should not have allowed plaintiff's counsel to withdraw, because plaintiff and Andigo had no right to settle without defendant's permission, particularly where defendant would ultimately become responsible for the settlement figure. As plaintiff had received money from Andigo and had not filed a supplemental appearance, defendant argued that "motion to take proper actions as mandate[d] by law [*sic*]" and that plaintiff's counsel should be sanctioned. Defendant re-alleged bias by the trial court and moved to vacate the order allowing plaintiff's counsel's withdrawal.

¶ 10 On March 8, 2019, the trial court held a status hearing. The attorney for Andigo noted that plaintiff had not filed a supplemental appearance, and she suggested that the case be dismissed for want of prosecution. Defendant asserted that, as plaintiff had not filed a supplemental appearance, he had "no reason to file a counterclaim until they have an attorney on file." He also explained that he was moving to vacate the order allowing plaintiff's counsel's withdrawal, because the case was fraudulent and he never owed plaintiff money. The court then questioned whether defendant understood what he was talking about, and the following exchange ensued:

> "THE COURT: Why are you asking me to vacate the order allowing [plaintiff's] attorney to withdraw if, in the first breath, essentially, the case is over?
>
> DEFENDANT: The case is not—how do I file a counter claim if—
>
> THE COURT: I can't give you legal advice, sir.
>
> ***

THE COURT: There is a suggestion that the case proper, the initial complaint[,] be dismissed for want of prosecution.

DEFENDANT: Okay.

THE COURT: You agreed that you cannot file a counterclaim because there is no pending cause of action. There is nobody to argue against. So from my vantage point, the case is over. Congratulations.

Then you say, no, I want [plaintiff] back in the case or their attorney, Mr. Kreuzer. So I guess he could file a complaint against you and keep it going. So I don't know if you understand the proceedings.

DEFENDANT: I do understand exactly, your Honor, what—

THE COURT: No, you don't.

DEFENDANT: Yes, I do.

THE COURT: Okay.

\*\*\*

THE COURT: \*\*\* the case is over. You win. [Plaintiff] is going—they have gone away. They have evaporated. That's what you've wanted.

DEFENDANT: Your Honor, if I may, I have a letter here where Motor — Andigo paid [plaintiff] the settlement $11,000. Now the letter, which is on record with this Court—

THE COURT: Here is what I would suggest. I don't want to talk in conjecture. I want to talk with complaints or counter complaints that are on file. So unless there is something for the Court to consider, and there is nothing, this is my suggestion, I'll ask [Andigo's] kind counsel here, since she started the discussion, to draft an order which provides for this case to be over. If there is any other issue, then, perhaps that can be

addressed in separate litigation. But I think what should be done is getting the litigation with [plaintiff] off of the books. And that's a victory for you, sir. Congratulations.

DEFENDANT: Your Honor, if I may, the Appellate Court, okay, grant[ed] me the right to re-file.

THE COURT: And you have not.

DEFENDANT: And I have until March 30 or 25 or whatever to file a counter claim with this Court, is that correct?

THE COURT: There is nothing pending. [Andigo's counsel] is—she is moving to dismiss the complaint. There is nothing to counter against.

*** 

THE COURT: Sir, you've won.

DEFENDANT: But I am responsible for $11,000 that Andigo paid to Motorola as—

THE COURT: Respectfully, I have no idea what you are talking about. I do but I don't. *There is nothing pending that addresses that, sir.*

DEFENDANT: You have the case. I have a letter here which is on record with the Court that states that the $11,000 in Andigo pay to Crosstown on the (indiscernible) which it was not allowed stated that I am responsible, I'm liable for the $11,000.

THE COURT: Okay.

DEFENDANT: Okay. How can the case be over?

THE COURT: So I can't give you legal advice. Maybe you can talk to one of these fine attorneys out there.

DEFENDANT: I don't need an attorney, your Honor." (Emphasis added.)

The court and defendant then discussed whether defendant could benefit from an attorney and, further, defendant expressed confusion concerning who would answer his counterclaim if plaintiff was no longer part of the case and why, if plaintiff received $11,000, it could not afford an attorney. Moreover, the court reiterated that dismissing the cause of action against defendant was a victory for him and, when defendant asked if the order could state that he was not responsible for the $11,000, the court asked if there was a pending lawsuit seeking $11,000 from him and defendant answered, "no." Further discussion revealed that, per the mortgage contract, Andigo had added $11,000 to defendant's account as a fee, but not to the mortgage itself and, further, that there was no lawsuit seeking that money from defendant. Ultimately, the court noted that plaintiff, who had been the party claiming that defendant had not honored his obligations, was gone and that the court could have ended the case against defendant. However, defendant was pressing for it to continue and the court, again advising defendant that he might wish to consider obtaining legal assistance, continued the case until April 1, 2019, "for any appropriate action considering pending filings or lack thereof."

¶ 11  On April 1, 2019, the defendant and Andigo returned for status. Counsel for Andigo argued that, as plaintiff had still not appeared, it was renewing its oral motion to dismiss the case for want of prosecution and, further, counsel noted that defendant had not filed amended counterclaims.

¶ 12 On May 1, 2019, in a written order, the court found that, although on remand defendant was provided the opportunity to file a counterclaim, he never did so. Further, it commented that the issue whether defendant would ultimately be responsible for the $11,000 was never properly before it. The court noted,

> "[Defendant] defended against the Complaint through the filing of various and typically incoherent pleadings. Throughout his pleadings and presentations, [defendant]

has continued to note he is '*pro se*,' that is 'self-represented'. The Court continues to recognize this. The Court also continues to note that [defendant] must follow the same rules, statutes, and law which the other parties in the case are required to follow. Rule 63(A)(4) of the Supreme Court of Illinois [hereinafter Rule 63(A)(4)] states:

> 'A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the ability of self-represented litigants to be fairly heard.'

> Once again, the Court, however, cannot advance the cause of the self-represented litigant in disregard to the law and the rights of others. Further, the Court must require self-represented litigants to follow the law, including the procedural aspects of the law.

> Here, the Complaint which brought this case to the courthouse has been dismissed. [Defendant] has prevailed on the same. Further, however, [defendant] has not filed an amended counterclaim as he requested leave to do, as the Appellate Court directed, and as this Court has allowed. As such, there is no pending cause of action in this case."

¶ 13 The court found that the filings that defendant *did* prepare should be stricken or denied. The court concluded that "this case has run its course and, with nothing pending, should be closed." Defendant, *pro se*, appeals.

¶ 14                                    II. ANALYSIS

¶ 15 Defendant's *pro se* arguments on appeal remain difficult to comprehend and lack coherent legal structure. He purports to raise eight overarching issues, but they appear, in sum, to assert that: (1) he could not file a counterclaim because plaintiff had no legal representation; (2) the trial judge violated judicial canons, was mentally unfit and biased against defendant, and breached

constitutional protections for *pro se* litigants; and (3) there exists a question of fact as to whether Andigo, in entering into a settlement agreement with plaintiff without defendant's participation, violated the contract-lender agreement.

¶ 16 We initially note that defendant's failure to adequately present his arguments with clarity foists the burden of research onto this court and, to the extent that we cannot understand the arguments, we consider them forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶¶ 12-13. We choose, however, to address what we glean to be the gist of plaintiff's overarching claims together, as they are interrelated.

¶ 17 We reject any notions of judicial bias. Indeed, we held during the first appeal that the trial court was not biased against defendant, and nothing that occurred on remand alters that conclusion. Rather, the court was tasked with walking the fine line between liberally construing a *pro se* litigant's efforts while simultaneously not providing legal advice or, in effect, helping to represent the *pro se* litigant. The trial court was well-aware of its responsibility to reasonably allow a *pro se* litigant to be fairly heard and, indeed, it cited Illinois Supreme Court Rule 63(A)(4) (eff. Feb. 2, 2017) in its written decision. However, the law is clear that "*pro se* litigants are presumed to have full knowledge of applicable court rules and procedures and must comply with the same rules and procedures as would be required of litigants represented by attorneys." *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1067 (2009). The court was not encroaching on defendant's rights by trying to encourage him to either obtain counsel or by holding him to this standard.

¶ 18 Further, this court remanded the case for the express purpose of allowing defendant the opportunity to file, if he wished, amended counterclaims. In accordance with our mandate, the trial court provided defendant an opportunity (over several months) to file amended counterclaims.

He never did so. Defendant's present position that he could not do so because plaintiff lacked legal representation is non-sensical, as that fact does not prevent a party from filing a document with the court, and, in any event, it did not hinder him from filing multiple *other* motions. Defendant's query as to who would respond to his counterclaims, if plaintiff no longer existed, gets right to the heart of the issue, and the trial court's frustration, with the case status. Contrary to being biased *against* defendant, the trial court made efforts to *explain* to defendant that plaintiff's failure to prosecute and/or its defunct status was a *good* thing for defendant, obviating the need for a counterclaim, as plaintiff was the entity that commenced legal action against him and, therefore, the litigation could be terminated without plaintiff having obtained any relief from defendant. Defendant's persistent confusion on this point prompted the trial court to again suggest that defendant consider legal representation. Even after repeated attempts to obtain defendant's understanding that the case in its existing framework (*i.e.*, with defendant having succeeded *without* filing counterclaims against plaintiff) could be dismissed, the court still allowed defendant more time to file, if he wished, counterclaims. Again, given the foregoing, we reject defendant's claims that the trial court was biased, unfit, violated his rights, or acted without judicial integrity.

¶ 19 We acknowledge, as did the trial court, that defendant's reluctance to embrace a dismissal of the case was premised on his concern that Andigo was purportedly charging him, as a fee, the $11,000 settlement payment it made to plaintiff. Andigo claimed that the fee was proper in accordance with the terms of defendant's mortgage contract. Whether or not that is the case, and as the court tried to explain to defendant, the question of whether Andigo could legally charge defendant this fee was never formally before the court because: (1) plaintiff's complaint allegations did not concern that issue; and (2) no properly-pleaded counterclaims against plaintiff were filed, (even if crafting one on this point was even possible); and (3) no claim was pending between

defendant and *Andigo*. We understand that defendant worries about the possibility of having to pay $11,000, when Andigo settled with plaintiff without defendant's involvement and, according to defendant, without plaintiff first establishing that it was entitled to payment. As the trial court noted, while that issue, which concerns defendant and *Andigo*, is potentially one for another day, it is not one that was properly before the trial court, nor before us here.

¶ 20  In sum, we are not unsympathetic to defendant's frustrations and the personal strain that  he endured while trying to navigate difficult issues without legal representation.  Nevertheless, the record does not reflect error in the trial court's treatment of defendant, nor in its closure of the case at this juncture. The court's procedures and order on remand were in accord with our mandate and, thus, we affirm. See *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 32.

¶ 21                                III. CONCLUSION

¶ 22 For the foregoing reasons, the judgment of the circuit court of McHenry County is  affirmed.

¶ 23 Affirmed.